IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONNA OSBOURNE TORRES,                    07-CV-202-BR

       Plaintiff,

                            OPINION AND ORDER

v.

RELIANCE STANDARD LIFE
INSURANCE COMPANY; MATRIX
ABSENCE MANAGEMENT, INC.; and
the TEKTRONIX, INC., LONG
TERM DISABILITY PLAN,

       Defendants.


**SAMUEL T. STANKE**
1400 S.W. Montgomery Street
Portland, OR 97201
(503) 224-1127

       Attorney for Plaintiff

**SAMUEL K. ANDERSON**
Davis Rothwell Earle & Xochihua, PC
1900 Wells Fargo Center
1300 S.W. Fifth Avenue
Portland, OR 97201-5604
(503) 222-4422


1 - OPINION AND ORDER

**JOSHUA BACHRACH**
Rawle & Henderson, LLP
The Widener Building
One South Penn Square
16th Floor
Philadelphia, PA 19107
(215) 575-4200

      Attorneys for Defendants

**BROWN, Judge.**

      This matter comes before the Court on Defendants' Motion for Summary Judgment (#22) and Plaintiff's Cross-Motion for Summary Judgment (#26).  For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Cross-Motion for Summary Judgment.


<u>BACKGROUND</u>

      Plaintiff Donna Osbourne Torres began working for Tektronix, Inc., on March 25, 1996, and worked there until October 31, 2003. As a benefit of her employment, Plaintiff was a participant in the Tektronix Long Term Disability (LTD) Plan.  Defendant Reliance Standard Life Insurance Company is the insurer and "Claims Review Fiduciary" of the Plan.  Defendant Matrix Absence Management, Inc., also administers the Plan.

**I.  Plan Language**

      The Plan provides Defendants will pay a "Monthly Benefit" if an insured:

     (1)  is Totally Disabled as a result of a Sickness
          or Injury covered by this Policy;

     (2)  is under the regular care of a Physician;

     (3)  has completed the Elimination Period; and

     (4)  submits satisfactory proof of Total
          Disability to us.

Administrative Record (AR) 725.  The Plan defines "Totally

Disabled" to mean

     as a result of Injury or Sickness:

     (1)  during the Elimination Period and for the
          first 24 months for which a Monthly Benefit
          is payable, an Insured cannot perform the
          material duties of his/her regular
          occupation; . . .

     (2)  after a Monthly Benefit has been paid for 24
          months, an insured cannot perform the
          material duties of any occupation.  Any
          occupation is one that the Insured's
          education, training or experience will
          reasonably allow.

AR 717.

## II.  Factual Background

In 1999 or 2000, Plaintiff moved from the position of

fourth-level engineer with Tektronix to a job as a web

applications developer/systems analyst, which is a sedentary

"desk job."

On March 21, 2004, Plaintiff filed a claim for LTD benefits

under the Plan alleging she was unable to perform her job due to

back pain.  On June 1, 2004, Defendants approved Plaintiff's

claim and found Plaintiff satisfied the Plan's definition of

3 - OPINION AND ORDER

Total Disability for her occupation.  Defendants informed Plaintiff that "[p]eriodic documentation of [her] disability status will be required for further benefit consideration. Objective documentation of [her] continuous disability must be provided by the physician who is treating [her] and [be] satisfactory to us."  AR 303.  Defendants further informed Plaintiff that the Plan "stipulates that in order to be eligible for Long Term Disability Benefits beyond 24 months [she] must be totally disabled from performing the material duties of Any Occupation . . . [and she] will reach the 24th month on April 29, 2006."  AR 304.

In November 2005, Defendants attempted to schedule an Independent Medical Examination (IME) for Plaintiff with Thomas J. Rosenbaum, M.D.  Plaintiff, however, objected to Dr. Rosenbaum performing such an examination because he had examined her previously in relation to a worker's compensation claim and, according to Plaintiff, reported certain aspects of that examination incorrectly.  Plaintiff, therefore, appeared for the examination with a tape recorder with the intention of recording it.  Dr. Rosenbaum refused to allow the examination to be recorded, and the exam did not proceed.  AR 1625-26.

On March 1, 2006, Defendants sent Plaintiff a letter reminding her that a different definition of "Totally Disabled" would apply for purposes of the Plan as of April 24, 2006.

4 - OPINION AND ORDER

AR 1085.  Defendants noted "[t]he medical documentation on file currently supports [Plaintiff's] disability [only] through June 30, 2006."  Defendants, therefore, requested Plaintiff to provide updated medical information from her doctors "in order to evaluate [Plaintiff's] entitlement to benefits beyond June 30, 2006."  AR 1085.

On June 5, 2006, and June 16, 2006, Defendants reiterated their request for Plaintiff to provide them with updated medical information and asked to receive that information by July 17, 2006.  AR 477.  Defendants did not receive updated medical information from Plaintiff by July 17, 2006.  On August 2, 2006, therefore, Defendants informed Plaintiff that they were suspending her ongoing benefit payments because the medical information in Defendants' file did not support them.  AR 1013-16.

On August 28 and September 5, 2006, Plaintiff submitted updated medical records to support her claim for benefits.  On September 8, 2006, Defendants sent Plaintiff a letter notifying her that Defendants were denying continued LTD benefits for Plaintiff from August 1, 2006, after reviewing her updated medical records.  AR 941-43.  Defendants noted their medical department determined that, "absent [Plaintiff's] current psychiatric contributions, and based on physical conditions only, [Plaintiff] would be able to perform work of a sedentary nature."

5 - OPINION AND ORDER

AR 942.  Plaintiff appealed the denial of her claim.

On January 19, 2007, Defendants informed Plaintiff by letter that they adhered to their original decision to deny her claim. Defendants relied on the medical records produced by Plaintiff; an independent medical review (IMR) conducted by Anne MacGuire, M.D.; a Residual Employability Analysis (REA) conducted by a vocational expert, Jody Barach; an IMR psychiatric evaluation by Kevin P. Hayes, M.D., M.B.A.; and information found on the Internet that suggested Plaintiff was actively involved in the Wine & Food Society of Clark County and running a web-design business out of her home.

In her IMR, Dr. MacGuire reviewed the medical records provided by Plaintiff and noted diagnoses of chronic pain syndrome, degenerative arthritis of the lumbar spine, mild degenerative arthritis of the cervical spine, and "bilateral knees with improving osteoporosis."  AR 490.  Dr. MacGuire found the electrical studies of Plaintiff's right median nerve "were so minimal that [she] would hesitate to even call it carpal tunnel syndrome."  AR 490.  Dr. MacGuire also observed "there is no evidence for a neuropathic process in any of the history and multiple physical exams.  In my opinion this diagnosis [of fibromyalgia] is not warranted."  AR 491.  With respect to Plaintiff's prognosis, Dr. MacGuire noted

> degenerative arthritis in the lumbar spine, knees
> and improving osteoporosis are all common chronic

> problems that most adults deal with. . . .  Most
> adults over the age of 40 have changes consistent
> with mild to moderate degenerative arthritis of
> the lumbar spine and weight bearing joints.  These
> are certainly not shockingly severe conditions.

AR 491.  As for Plaintiff's prognosis for degenerative arthritis,

Dr. MacGuire stated "it does not necessarily progress.  Fitness,

caution with lifting and activity are essential for maintenance

and control of symptoms."  AR 491.  Dr. MacGuire further reported

the prognoses for Plaintiff's osteoporosis and for her chronic

pain management are "excellent," and any fibromyalgia is not a

disabling condition.  AR 491.  Dr. MacGuire stated Plaintiff

should not participate in repetitive bending, twisting, or

lifting objects that weigh more than 35 pounds on a regular

basis, but Plaintiff was not restricted as to sitting, standing,

walking, driving, fine motor control, or hand activities.  AR

491.

    In his psychiatric chart review, Dr. Hayes relied on the

medical records submitted by Plaintiff and opined the medical

records do "not support the presence of any severe impairing

psychiatric illness for any period of time since the date of

loss."  AR 539.  Dr. Hayes noted there was

> evidence of possible selective history given [by
> Plaintiff] to . . . providers . . . .  [For
> example, Plaintiff] denied any previous back
> injury to one provider but later reported a
> significant back injury to another provider that
> had occurred in 1996.  She seemed to have require
> [*sic*] rather concentrated and intensive treatment
> for that injury.

AR 539.  Dr. Hayes reported

> [t]he records suggest [Plaintiff] is very invested
> in establishing a temporal relationship between
> her back pain and the lifting of a monitor at
> work. . . .  Some providers have indicated that
> there is evidence of psychological overlay, but
> this is a generic catchall which could be
> inclusive of symptoms of a somatoform condition,
> factitious disorder or even malingering. . . .
> Given the inconsistencies noted in the records, I
> cannot discern [Plaintiff] has had or currently
> has any severe psychiatric condition. . . .
> [T]here is considerable concern about the
> inconsistencies that are reflected in the claim
> and the differences in histories gathered by
> various providers.

AR 540.

For the REA, Barach reviewed the medical records submitted
by Plaintiff as well as Plaintiff's job description and previous
work experience and concluded Plaintiff "has transferable skills"
pursuant to the United States Department of Labor Dictionary of
Occupational Titles that would allow her to perform work as a
programmer analyst, systems analyst, user-support analyst,
desktop publisher, and/or network-control operator.  AR 737-38.

In their January 19, 2007, letter, Defendants also relied on
information gleaned from an Internet search that

> resulted in [Defendants'] discovery that
> [Plaintiff] is quite active in the Food & Wine
> Society of Clark County . . . .  [F]or example,
> [Plaintiff] . . . was physically capable of
> coordinating and participating in a six-hour club
> outing on October 14, 2006, *and she apparently
> planned to do so in advance*.

AR 481 (emphasis in original).  Defendants attached print-outs of

8 - OPINION AND ORDER

Internet pages describing the October 14, 2006, outing and requesting members of the society to "RSVP to Donna Torres."  AR 559.  Defendants also attached the October 2006 newsletter of the Food & Wine Society of Clark County in which it was reported that Plaintiff attended a wine-sharing dinner on September 15, 2006. AR 616.  The Food & Wine Society newsletter also informed members that Plaintiff and her husband would be hosting a Christmas party for the Society at their home on December 9, 2006, from "6:00 p.m. - ???," which would include "food, music, wine, and lots of fun."  AR 482.  In a later newsletter, the Society thanked the Torreses for the Christmas party and reported it included "a vertical tasting of wines . . . and a 'white elephant' gift exchange."  AR 591.

Defendants also attached pages from the website of LDTorres.com that show the company designed several websites between 2004 and 2006.  In addition, Defendants investigated LDTorres.com on the Internet via "who.is."  AR 483.  Who.is noted the domain name LDTorres.com was registered to Plaintiff's home address and listed Plaintiff as the administrative, technical, and billing contact for the company.  AR 518.  Defendants concluded they "must assume [Plaintiff] is currently engaging in her pre-disability occupation of Web Application Developer by operating a web design company from home" because they had not "received information from any *disinterested* party to the

9 - OPINION AND ORDER

contrary."  AR 483 (emphasis in original).

## III. Procedural Background

On February 12, 2007, Plaintiff filed a Complaint in this Court in which she alleged Defendants violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), and defamed Plaintiff.

On May 22, 2007, Plaintiff filed a First Amended Complaint in which she alleges Defendants violated ERISA when they denied her claim for LTD benefits.

On September 26, 2007, Defendants moved for summary judgment on the ground that Defendants did not abuse their discretion when they denied Plaintiff's claim for benefits under the Plan.  On October 22, 2007, Plaintiff filed a Cross-Motion for Summary Judgment.


## STANDARD OF REVIEW

Although this matter is before the Court on cross-motions for summary judgment, the usual summary judgment standard under Federal Rule of Civil Procedure 56 is not applicable to ERISA actions.  When reviewing a benefit plan's decision to deny benefits, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply."  *Bendixen v. Standard Ins.*

*Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

## I.  Abuse of discretion vs. *de novo* review of ERISA plans generally.

When an ERISA plan provides the plan administrator with discretionary authority to determine eligibility for benefits, the district court ordinarily reviews the plan administrator's decision to grant or to deny benefits for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

"Abuse of discretion review applies to a discretion-granting plan even if the administrator has a conflict of interest . . . . [T]hat conflict [,however,] must be weighed as a factor in determining whether there is an abuse of discretion." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006)(quotation omitted).  "A district court when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage.  An egregious conflict may weigh more heavily . . . than a minor, technical conflict might." *Id.* at 968.

> The level of skepticism with which a court
> views a conflicted administrator's decision may
> be low if a structural conflict of interest is
> unaccompanied, for example, by any evidence of
> malice, of self-dealing, or of a parsimonious
> claims-granting history.  A court may weigh a
> conflict more heavily if, for example, the
> administrator provides inconsistent reasons for
> denial, fails adequately to investigate a claim
> or ask the plaintiff for necessary evidence,
> fails to credit a claimant's reliable evidence,
> or has repeatedly denied benefits to deserving
> participants by interpreting plan terms incor-

> rectly or by making decisions against the weight
> of evidence in the record.

*Id*. at 968-69 (citations omitted).

Plaintiff bears the burden to establish that she is disabled and, therefore, is entitled to benefits.

Generally the district court only reviews

> the administrative record when considering whether
> the plan administrator abused its discretion, but
> may admit additional evidence on *de novo* review.
> That principle is consistent with *Tremain*, 196
> F.3d at 976-79, which permits extrinsic evidence
> on the question of a conflict of interest.  The
> district court may, in its discretion, consider
> evidence outside the administrative record to
> decide the nature, extent, and effect on the
> decision-making process of any conflict of
> interest; the decision on the merits, though, must
> rest on the admini- strative record once the
> conflict (if any) has been established, by
> extrinsic evidence or otherwise.

*Id*. at 970.  "[P]rocedural irregularities in processing an ERISA claim do not usually justify *de novo* review."  *Id.* at 972. "There are, however, some situations in which procedural irregularities are so substantial as to alter the standard of review" such as when a plan administrator "engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan." *Id*. at 971.  In that instance, the Court must review *de novo* the administrator's decision to deny benefits.  *Id*.

"When a plan administrator has failed to follow a procedural requirement of ERISA, the court may have to consider evidence

outside the administrative record."  *Id*. at 972-73.

> Even when procedural irregularities are smaller,
> . . . and abuse of discretion review applies, the
> court may take additional evidence when the
> irregularities have prevented full development of
> the administrative record.  In that way the court
> may, in essence, recreate what the administrative
> record would have been had the procedure been
> correct.

*Id*. at 973.

## II.  Abuse-of-discretion standard of review applies in this matter.

The parties agree the policy in this case contains an explicit grant of discretionary authority to Reliance as Claims Review Fiduciary to interpret the policy and to make decisions about eligibility for benefits.  Accordingly, the Court generally would review the denial of Plaintiff's benefits using the abuse-of-discretion standard.  Nevertheless, Plaintiff contends the Court should review *de novo* Defendants' decision to deny Plaintiff benefits under the Plan because (1) Defendants are operating under an inherent or structural conflict of interest and (2) Defendants denied Plaintiff the opportunity to address the accuracy and reliability of the two IMRs, the REA, and the Internet print-outs on which Defendants based their final decision to terminate Plaintiff's benefits.  Defendants, however, contend the Court should apply the abuse-of-discretion standard because Defendants provided consistent reasons "grounded on [a] reasonable basis" for denying Plaintiff's claims.

The Ninth Circuit has noted instances when the court should review *de novo* an administrator's decision to deny benefits because an administrator "engaged in wholesale and flagrant violations of the procedural requirements of ERISA, and thus act[ed] in utter disregard of the underlying purpose of the plan" are "rare." *Id.* at 971-72. The Ninth Circuit, however, also has noted *de novo* review is "not mandated" in the "more ordinary situation in which a plan administrator has exercised discretion, but in doing so, has made procedural errors." *Id*. at 972.

In *Abatie*, the Ninth Circuit pointed out that it had previously found a plan administrator committed wholesale and fragrant violations of the procedural requirements of ERISA when "the administrator had kept the policy details secret from the employees, offered them no claims procedure, and did not provide them in writing the relevant plan information." *Id*. at 971 (citing *Blau v. Del Monte Corp*., 748 F.2d 1348 (9th Cir. 1984)). The Ninth Circuit declined to review *de novo* the administrator's denial of the plaintiff's claim even though the court concluded the administrator "tack[ed] on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level" and violating ERISA procedures. *Abatie*, 458 F.3d at 974. The Ninth Circuit concluded "this procedural violation must be weighed by the district court in deciding whether [the defendant]

abused its discretion." *Id.*

There is not any evidence here that Defendants kept the policy details secret from Plaintiff, failed to offer her a claims procedure, failed to provide her with the relevant plan information in writing, or committed similar procedural errors that rise to the level of "wholesale and flagrant violations of the procedural requirements of ERISA." The Court, therefore, concludes Defendants did not "act[] in utter disregard of the underlying purpose of the plan."

Accordingly, the Court reviews Defendants' denial of Plaintiff's claim for abuse of discretion.

**III. Level of Scrutiny**

Although the Court has determined it will review Defendants' decision for abuse of discretion, the Court must now determine "the . . . level of scrutiny with which to review the denial." *Peterson v. Fed. Express Corp. Long Term Disability Plan*, No. CV-05-1622-PHX-NVW, 2007 WL 1624644, at *19 (D. Ariz. June 4, 2007)(citing *Abatie*, 458 F.3d at 965). When the administrator of a benefit plan also operates as the funding source, a conflict of interest is "inherent" and generally the court must give it some weight "even if [the conflict is] merely formal and unaccompanied by indicia of bad faith" because it creates an "incentive to pay as little in benefits as possible to plan participants." *Abatie*, 458 F.3d at 965-66. In addition, when determining the level of

15 - OPINION AND ORDER

scrutiny to apply, courts also may consider factors such as
evidence of malice, self-dealing, "a parsimonious claims-granting
history," inconsistent reasons for denial, inadequate
investigation into a claim, failure to credit a claimant's
reliable evidence, a history of denying "benefits to deserving
participants by interpreting plan terms incorrectly or by making
decisions against the weight of evidence in the record," and
procedural irregularities. *Id. at* 968, 972. As noted,
Defendants here have a structural or inherent conflict of
interest. The Court, therefore, must give that fact "some
weight" when reviewing Defendants' decision to deny Plaintiff's
claim for benefits.

Plaintiff contends the Court should review Defendants'
decision with a high level of scrutiny because Defendants'
decision contained procedural irregularities that prohibited
Plaintiff from fully developing the administrative record; *i.e.*,
Defendants relied for the first time on the IMRs, the REA, and
information from the Internet when they made their final decision
denying Plaintiff's claim. Defendants, on the other hand,
contend their conduct does not warrant a high level of scrutiny
by the Court. Defendants rely on *Silver v. Executive Car Leasing
Long-Term Disability Plan*, 466 F.3d 727 (9th Cir. 2006), to
support their position.

In *Silver*, when the defendant benefit plan made its final

decision denying the plaintiff's claim, it relied for the first time on a report by a vocational expert who based his opinion on the plaintiff's medical records. *Id*. at 732. The court concluded it was not procedural error for the defendant to do so. The court reasoned it would "lead to an interminable back-and-forth between the plan administrator and the claimant" if the defendant had to disclose the vocational expert report prior to its final decision because disclosure would prompt a response from the employee, which would, in turn, require more evaluation. *Id*. The court also noted the defendant satisfied ERISA's requirement of full and fair review with respect to the vocational expert's report because the plaintiff had "enough information to prepare adequately for . . . an appeal to the federal courts" without disclosure of the report. *Id*.

Here, as in *Silver*, Defendants did not err when they failed to disclose the two IMRs and REA before issuing a final decision because such disclosure would have led to the "interminable back-and-forth" cautioned against in *Silver*. In addition, the IMRs and the REA were based on records that Plaintiff submitted and that she had a full opportunity to explain. This Court, therefore, concludes these reports do not constitute procedural irregularities and, therefore, do not justify a heightened level of scrutiny.

Defendants' reliance on information gleaned from the

Internet regarding Plaintiff's social activities, however,
presents a different issue because Plaintiff could not anticipate
Defendants' consideration of that information before Defendants'
final denial of Plaintiff's claim.  The Court, therefore,
concludes Defendants' reliance on these new and unanticipated
materials in its final decision constitutes a more significant
procedural irregularity.  Accordingly, the Court will apply a
"moderate level" of scrutiny to Defendants' decision to deny
Plaintiff's claim for benefits.  *See, e.g., Peterson*, 2007 WL
1624644, at *20 (applying moderate level of scrutiny to the
defendant benefit plan's decision to deny benefits when the court
concluded the decision contained procedural irregularities).

## DISCUSSION

As noted, on January 19, 2007, Defendants denied Plaintiff's
LTD claim on the ground that she did not establish she was unable
to perform the material duties of *any* occupation.  Defendants
relied on the medical records provided by Plaintiff, the IMRs,
the REA, and information obtained from the Internet.

**I.   Evidence submitted by Plaintiff for the first time.**

Plaintiff contends she should have a chance to rebut
the new evidence Defendants relied on in their final denial of
her claim; specifically, by introducing the Declarations of
Plaintiff, her husband Lawrence Torres, and her son Travis

18 - OPINION AND ORDER

Osbourne in which they address Defendants' assertions that Plaintiff was active in the Food & Wine Society of Clark County and was running a web-design business from her home. According to Defendants, however, the Court must review only the materials in the administrative record under the abuse-of-discretion standard. Thus, Plaintiff should not be allowed to submit evidence that was not before the administrator.

Defendants again rely on *Silver* in which the Ninth Circuit reiterated the restriction that a district court, when reviewing the denial of an ERISA claim, may only consider evidence that was in the record at the time of the administrator's decision. The court noted this restriction is "based on the principle that federal district courts should not function as substitute plan administrators, and . . . expanding the record on appeal would frustrate the goal of prompt resolution of claims by the fiduciary." 466 F.3d at 731 n.2. In *Silver*, the Ninth Circuit rejected the plaintiff's argument that "the district court improperly admitted documents prepared by [the defendant] in the course of the administrative appeal[,and, therefore, the defendant] unfairly kept the record open for itself after closing the record to [the plaintiff]." *Id*. at 732. The court reasoned the defendant "*had* to wait until [the plaintiff] had submitted all of his materials; for [the defendant] to do otherwise would either undermine [the plaintiff's] ability to present all of his

supporting information or lead to an interminable back-and-forth between the plan administrator and the claimant." *Id*. (emphasis in original).

The Ninth Circuit reached a different conclusion, however, in *Saffon v. Wells Fargo & Company Long Term Disability Plan*, 511 F.3d 1206 (9th Cir. 2008). In *Saffon*, the Ninth Circuit held the district court erred when it refused to consider evidence presented by a beneficiary that was not before the administrator even though the Ninth Circuit determined the abuse-of-discretion standard applied. *Id*. at 1215. The Ninth Circuit offered the following "additional guidance" for the parties and the district court:

> [On remand] the district court must give [the plaintiff] an opportunity to present evidence on the one issue that was newly raised by [the defendant] in its denial letter - the results of a Functional Capacity Evaluation or other objective evidence of whether she is totally disabled under the terms of the Plan. [The plaintiff] need not present the results of such an evaluation, though she should be allowed to do so if she wishes. However, [the plaintiff] may, instead, offer evidence (from Dr. Kudrow or some other qualified expert) that such evidence is not available or not particularly useful in diagnosing her ability to return to her job.

*Id*. at 1215-16.

Similarly in *Neathery v. Chevron Texaco Corporation Group Accident Policy No. OK826458*, the district court applied the abuse-of-discretion standard, reviewed the defendant benefit plan's decision to deny the plaintiff's claim, and concluded it

20 - OPINION AND ORDER

could properly consider extrinsic evidence "when procedural
irregularities during the administrative review affect
administrative review by, for example, preventing a full
development of the administrative record."  No. 05 CV 1883 JM
(CAB), 2007 WL 1110904, at *3 (S.D. Cal. Apr. 9, 2007)(citing
*Abatie*, 458 F.3d at 973).  The district court noted it also could
review evidence that was not before the administrator "even when
a defendant's decision is reviewed for abuse of discretion" so
that the court could "'recreate what the administrative record
would have been had the procedure been correct.'"  *Id.* (quoting
*Abatie*, 458 F.3d at 973).

Here Defendants' reliance on the IMRs and the REA in making
their final decision is similar to the conduct of the defendants
in *Silver*.  As noted, in *Silver* the Ninth Circuit concluded the
defendant had to wait for the plaintiff to produce all of his
supporting medical evidence before the defendant could develop
the vocational expert's opinion on which it relied.  If the
plaintiff had been allowed to present further evidence in
response to the vocational expert's opinion, the defendant would
have had to issue a second opinion to address the additional
evidence, which, in turn, would lead to "an interminable back-
and-forth between the plan administrator and the claimant."
*Silver*, 466 F.3d at 732.  Here Defendants commissioned the IMRs
and the REA based on all of the medical records that Plaintiff

21 - OPINION AND ORDER

submitted to support her claim.  Defendants had to wait until
Plaintiff's supporting evidence was complete before conducting an
IMR and REA.  Accordingly, the Court concludes Defendants'
reliance on the IMRs and REA when making their final decision was
not a procedural irregularity that justifies the admission of
additional extrinsic evidence by Plaintiff at this stage.

As noted, Defendants' reliance on information obtained from
the Internet, however, is the kind of information that
constitutes a different and new basis for denial that was not
previously produced by Plaintiff or referenced by Defendants in
their decisionmaking process.  Because Plaintiff has not had an
opportunity to respond to this new information, the Court will
review and consider the Declarations of Plaintiff, Lawrence
Torres, and Travis Osbourne as they bear on this "Internet
information."

## II.  Evaluation of the evidence.

Applying the abuse-of-discretion standard of review, the
issue before the Court is whether Defendants abused their
discretion when they denied Plaintiff's disability claim.  An
administrator's decision is an abuse of discretion when it is
"'without reason, unsupported by substantial evidence or
erroneous as a matter of law.'"  *Riffey v. Hewlett-Packard Co.
Disability Plan*, No. CIV. S-05-1331 FCD/JFM, 2007 WL 946200, at
*14 (E.D. Cal. Mar. 27, 2007)(quoting *Abnathya v. Hoffman-*

22 - OPINION AND ORDER

*LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).  If an administrator's decision has a rational basis, the court may not substitute its judgment for that of the administrator when determining eligibility for plan benefits even if the court disagrees with the administrator's decision.  *Id.*  Under the abuse-of-discretion standard, the court's inquiry "is not into whose interpretation of the evidence is most persuasive, but whether the plan administrator's interpretation is unreasonable." *Clark v. Wash. Teamsters Welfare Trust*, 8 F.3d 1429, 1432 (9th Cir. 1993)(quotation omitted).  Finally, "the focus of an abuse of discretion inquiry is the administrator's analysis of the administrative record - it is not an inquiry into the underlying facts." *Riffey*, 2007 WL 946200, at *14 (citing *Alford v. DCH Found. Group Long-Term Disability Plan*, 311 F.3d 955, 957 (9th Cir. 2002)).

Here Defendants had conflicting reports from some of Plaintiff's treating physicians and Defendants' reviewing physicians.  "This is typical of the evidence used in disability determinations.  Reasonable people can disagree on whether [Plaintiff] was disabled for purposes of the ERISA plan.  Because that is so, the administrator cannot be characterized as acting arbitrarily in taking the view that [Plaintiff] was not." *Jordan v. Northrop Grumman & Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004).  As in *Jordan*, Defendants had statements from

23 - OPINION AND ORDER

Plaintiff's doctors that she was disabled and opinions from
Defendants' doctors that Plaintiff was not entirely unable to
work even though she may suffer from a degenerative disease.
Although Plaintiff complained to numerous doctors about various
issues including back and joint pain and fatigue, the record
contains little objective evidence to support the level of pain
that Plaintiff reported.  For example, an MRI performed in March
2005 on Plaintiff's right knee showed "patella femoral marked
osteoarthritis and medial compartment mild osteoarthritis."  AR
836.  An x-ray of Plaintiff's left knee at the same time showed
"mild medial compartment joint space narrowing, minimal tibial
spine spurring, [and] no joint effusion."  AR 836.  Susan
Kranzpiller, M.D., one of Plaintiff's treating physicians, opined
the "impression [from the MRI and x-rays] is mild degenerative
disease."  AR 836.  Similarly, in February 2005, Patricia
Mizutani, M.D., an examining physician, opined Plaintiff had
"mild degenerative disease."  AR 1164.  In June 2005, Peter
Bonifede, M.D., another one of Plaintiff's treating physicians,
noted Plaintiff had limited range of motion and "flexion" in her
back as well as 6 of 18 fibromyalgia tender points.  AR 843.
Nevertheless, Dr. Bonifede "strongly encouraged [Plaintiff] to
become more active and do the exercises previously given to her
for her back, and . . . indicated that her chronic back pain will
become worse if she becomes less active."  AR 843.  On June 22,

2005, Keith Bernstein, M.D., interpreted an MRI of Plaintiff's
back and neck and reported it showed "mild right foraminal
narrowing [at the C2-3 level,] but this does not compress the
nerve root." AR 1139. Dr. Bernstein further reported the MRI
revealed at the C4-5 through C6-7 levels "a small disc bulge and
osteophyte formation present[, which] minimally narrows the canal
at these levels [and] mild left C6-7, moderate right C5-6, mild
left C5-6, mild right C4-5, and mild-to-moderate left C4-5
foraminal narrowing." AR 1139. On January 11, 2006, Robert S.
Djergaian, M.D., one of Plaintiff's treating physicians, reviewed
an MRI of Plaintiff's back and noted it showed "a small
retrolisthesis at L4-5, but the central extrusion at that level
seen in 2003 was no longer seen." AR 1354. Dr. Djergaian
further noted an EMG and nerve conduction studies showed

> some borderline slowing of the right median nerve
> at the wrist consistent with mild carpal tunnel
> syndrome, but no slowing of the ulnar nerve at the
> right elbow or slowing of the left median nerve.
> There was no denervation seen in the multiple
> right lower extremity muscles sampled . . . . So
> there was no evidence of radiculopathy.

AR 1354. Dr. Djergaian reported it was "difficult to interpreter
[*sic*] manual muscle testing in that [Plaintiff] appears
uncomfortable. She is also not giving full resistance with
dorsiflexion and eversion." AR 1355. Dr. Djergaian told
Plaintiff that "she really needs to work on mobilization and
activation . . . [because] she has severe flexibility as well as

weakness and conditioning problems." AR 1355. On January 27, 2006, Govind Singh, M.D., one of Plaintiff's treating physicians, noted he was concerned about Plaintiff's condition, but "need[ed] a diagnosis to guide further Rx." AR 1189.

As the Ninth Circuit explained in *Jordan*, because

> a person has a true medical diagnosis does not by itself establish disability. Medical treatises list medical conditions from amblyopia to zoolognia that do not necessarily prevent people from working. After a certain age, most people have pain, with or without palpation, in various parts of their body, and they often have other medical conditions. Sometimes their medical conditions are so severe that they cannot work; sometimes people are able to work despite their conditions; and sometimes people work to distract themselves from their conditions. Physicians have various criteria, some objective, some not, for evaluating how severe pain is and whether it is so severe as to be disabling. It is not for [the] court to decide [a claimant's conditions] should be treated by ERISA plan administrators as disabling in a particular case. That is a medical and administrative judgment committed to the discretion of the plan administrator based on a fair review of the evidence.

*Jordan*, 370 F.3d at 880.

Applying the abuse-of-discretion standard and a moderate level of scrutiny, the Court finds after a review of the record as a whole, including Plaintiff's supplemental materials, there is a reasonable basis for Defendants' conclusion that Plaintiff was not totally disabled within the meaning of that term as defined by the Plan. The Court, therefore, concludes Defendants did not abuse their discretion when they denied Plaintiff's

request for LTD benefits.

Accordingly, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Summary Judgment.


## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#22)**, DENIES** Plaintiff's Cross-Motion for Summary Judgment (#26), and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 14th day of March, 2008.


                              /s/ Anna J. Brown
                              _____
                              ANNA J. BROWN
                              United States District Judge


27 - OPINION AND ORDER

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

DONNA OSBOURNE TORRES,                         07-CV-202-BR

       Plaintiff,

                                     **OPINION AND ORDER**

v.

RELIANCE STANDARD LIFE
INSURANCE COMPANY; MATRIX
ABSENCE MANAGEMENT, INC.; and
the TEKTRONIX, INC., LONG
TERM DISABILITY PLAN,

       Defendants.

SAMUEL T. STANKE
1400 S.W. Montgomery Street
Portland, OR 97201
(503) 224-1127

       Attorney for Plaintiff

SAMUEL K. ANDERSON
Davis Rothwell Earle & Xochihua, PC
1900 Wells Fargo Center
1300 S.W. Fifth Avenue
Portland, OR 97201-5604
(503) 222-4422

**JOSHUA BACHRACH**
Rawle & Henderson, LLP
The Widener Building
One South Penn Square
16th Floor
Philadelphia, PA 19107
(215) 575-4200

      Attorneys for Defendants

**BROWN, Judge.**

      This matter comes before the Court on Defendants' Motion for Summary Judgment (#22) and Plaintiff's Cross-Motion for Summary Judgment (#26). For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Cross-Motion for Summary Judgment.

<u>**BACKGROUND**</u>

      Plaintiff Donna Osbourne Torres began working for Tektronix, Inc., on March 25, 1996, and worked there until October 31, 2003. As a benefit of her employment, Plaintiff was a participant in the Tektronix Long Term Disability (LTD) Plan. Defendant Reliance Standard Life Insurance Company is the insurer and "Claims Review Fiduciary" of the Plan. Defendant Matrix Absence Management, Inc., also administers the Plan.

**I.  Plan Language**

      The Plan provides Defendants will pay a "Monthly Benefit" if an insured:

2 - OPINION AND ORDER

> (1) is Totally Disabled as a result of a Sickness
>     or Injury covered by this Policy;
>
> (2) is under the regular care of a Physician;
>
> (3) has completed the Elimination Period; and
>
> (4) submits satisfactory proof of Total
>     Disability to us.

Administrative Record (AR) 725.  The Plan defines "Totally

Disabled" to mean

> as a result of Injury or Sickness:
>
> (1) during the Elimination Period and for the
>     first 24 months for which a Monthly Benefit
>     is payable, an Insured cannot perform the
>     material duties of his/her regular
>     occupation; . . .
>
> (2) after a Monthly Benefit has been paid for 24
>     months, an insured cannot perform the
>     material duties of any occupation.  Any
>     occupation is one that the Insured's
>     education, training or experience will
>     reasonably allow.

AR 717.

## II.  Factual Background

   In 1999 or 2000, Plaintiff moved from the position of

fourth-level engineer with Tektronix to a job as a web

applications developer/systems analyst, which is a sedentary

"desk job."

   On March 21, 2004, Plaintiff filed a claim for LTD benefits

under the Plan alleging she was unable to perform her job due to

back pain.  On June 1, 2004, Defendants approved Plaintiff's

claim and found Plaintiff satisfied the Plan's definition of

3 - OPINION AND ORDER

Total Disability for her occupation.  Defendants informed
Plaintiff that "[p]eriodic documentation of [her] disability
status will be required for further benefit consideration.
Objective documentation of [her] continuous disability must be
provided by the physician who is treating [her] and [be]
satisfactory to us."  AR 303.  Defendants further informed
Plaintiff that the Plan "stipulates that in order to be eligible
for Long Term Disability Benefits beyond 24 months [she] must be
totally disabled from performing the material duties of Any
Occupation . . . [and she] will reach the 24th month on April 29,
2006." AR 304.

In November 2005, Defendants attempted to schedule an
Independent Medical Examination (IME) for Plaintiff with Thomas
J. Rosenbaum, M.D.  Plaintiff, however, objected to Dr. Rosenbaum
performing such an examination because he had examined her
previously in relation to a worker's compensation claim and,
according to Plaintiff, reported certain aspects of that
examination incorrectly.  Plaintiff, therefore, appeared for the
examination with a tape recorder with the intention of recording
it.  Dr. Rosenbaum refused to allow the examination to be
recorded, and the exam did not proceed.  AR 1625-26.

On March 1, 2006, Defendants sent Plaintiff a letter
reminding her that a different definition of "Totally Disabled"
would apply for purposes of the Plan as of April 24, 2006.

4 - OPINION AND ORDER

AR 1085.  Defendants noted "[t]he medical documentation on file
currently supports [Plaintiff's] disability [only] through
June 30, 2006."  Defendants, therefore, requested Plaintiff to
provide updated medical information from her doctors "in order to
evaluate [Plaintiff's] entitlement to benefits beyond June 30,
2006."  AR 1085.

On June 5, 2006, and June 16, 2006, Defendants reiterated
their request for Plaintiff to provide them with updated medical
information and asked to receive that information by July 17,
2006.  AR 477.  Defendants did not receive updated medical
information from Plaintiff by July 17, 2006.  On August 2, 2006,
therefore, Defendants informed Plaintiff that they were
suspending her ongoing benefit payments because the medical
information in Defendants' file did not support them.  AR 1013-
16.

On August 28 and September 5, 2006, Plaintiff submitted
updated medical records to support her claim for benefits.  On
September 8, 2006, Defendants sent Plaintiff a letter notifying
her that Defendants were denying continued LTD benefits for
Plaintiff from August 1, 2006, after reviewing her updated
medical records.  AR 941-43.  Defendants noted their medical
department determined that, "absent [Plaintiff's] current
psychiatric contributions, and based on physical conditions only,
[Plaintiff] would be able to perform work of a sedentary nature."

5 - OPINION AND ORDER

AR 942.  Plaintiff appealed the denial of her claim.

On January 19, 2007, Defendants informed Plaintiff by letter that they adhered to their original decision to deny her claim. Defendants relied on the medical records produced by Plaintiff; an independent medical review (IMR) conducted by Anne MacGuire, M.D.; a Residual Employability Analysis (REA) conducted by a vocational expert, Jody Barach; an IMR psychiatric evaluation by Kevin P. Hayes, M.D., M.B.A.; and information found on the Internet that suggested Plaintiff was actively involved in the Wine & Food Society of Clark County and running a web-design business out of her home.

In her IMR, Dr. MacGuire reviewed the medical records provided by Plaintiff and noted diagnoses of chronic pain syndrome, degenerative arthritis of the lumbar spine, mild degenerative arthritis of the cervical spine, and "bilateral knees with improving osteoporosis."  AR 490.  Dr. MacGuire found the electrical studies of Plaintiff's right median nerve "were so minimal that [she] would hesitate to even call it carpal tunnel syndrome."  AR 490.  Dr. MacGuire also observed "there is no evidence for a neuropathic process in any of the history and multiple physical exams.  In my opinion this diagnosis [of fibromyalgia] is not warranted."  AR 491.  With respect to Plaintiff's prognosis, Dr. MacGuire noted

> degenerative arthritis in the lumbar spine, knees
> and improving osteoporosis are all common chronic

6 - OPINION AND ORDER

> problems that most adults deal with. . . .  Most
> adults over the age of 40 have changes consistent
> with mild to moderate degenerative arthritis of
> the lumbar spine and weight bearing joints.  These
> are certainly not shockingly severe conditions.

AR 491.  As for Plaintiff's prognosis for degenerative arthritis,

Dr. MacGuire stated "it does not necessarily progress.  Fitness,

caution with lifting and activity are essential for maintenance

and control of symptoms."  AR 491.  Dr. MacGuire further reported

the prognoses for Plaintiff's osteoporosis and for her chronic

pain management are "excellent," and any fibromyalgia is not a

disabling condition.  AR 491.  Dr. MacGuire stated Plaintiff

should not participate in repetitive bending, twisting, or

lifting objects that weigh more than 35 pounds on a regular

basis, but Plaintiff was not restricted as to sitting, standing,

walking, driving, fine motor control, or hand activities.  AR

491.

       In his psychiatric chart review, Dr. Hayes relied on the

medical records submitted by Plaintiff and opined the medical

records do "not support the presence of any severe impairing

psychiatric illness for any period of time since the date of

loss."  AR 539.  Dr. Hayes noted there was

> evidence of possible selective history given [by
> Plaintiff] to . . . providers . . . .  [For
> example, Plaintiff] denied any previous back
> injury to one provider but later reported a
> significant back injury to another provider that
> had occurred in 1996.  She seemed to have require
> [*sic*] rather concentrated and intensive treatment
> for that injury.

7 - OPINION AND ORDER

AR 539.  Dr. Hayes reported

> [t]he records suggest [Plaintiff] is very invested
> in establishing a temporal relationship between
> her back pain and the lifting of a monitor at
> work. . . .  Some providers have indicated that
> there is evidence of psychological overlay, but
> this is a generic catchall which could be
> inclusive of symptoms of a somatoform condition,
> factitious disorder or even malingering. . . .
> Given the inconsistencies noted in the records, I
> cannot discern [Plaintiff] has had or currently
> has any severe psychiatric condition. . . .
> [T]here is considerable concern about the
> inconsistencies that are reflected in the claim
> and the differences in histories gathered by
> various providers.

AR 540.

For the REA, Barach reviewed the medical records submitted
by Plaintiff as well as Plaintiff's job description and previous
work experience and concluded Plaintiff "has transferable skills"
pursuant to the United States Department of Labor Dictionary of
Occupational Titles that would allow her to perform work as a
programmer analyst, systems analyst, user-support analyst,
desktop publisher, and/or network-control operator.  AR 737-38.

In their January 19, 2007, letter, Defendants also relied on
information gleaned from an Internet search that

> resulted in [Defendants'] discovery that
> [Plaintiff] is quite active in the Food & Wine
> Society of Clark County . . . .  [F]or example,
> [Plaintiff] . . . was physically capable of
> coordinating and participating in a six-hour club
> outing on October 14, 2006, *and she apparently
> planned to do so in advance*.

AR 481 (emphasis in original).  Defendants attached print-outs of

8 - OPINION AND ORDER

Internet pages describing the October 14, 2006, outing and
requesting members of the society to "RSVP to Donna Torres."  AR
559.  Defendants also attached the October 2006 newsletter of the
Food & Wine Society of Clark County in which it was reported that
Plaintiff attended a wine-sharing dinner on September 15, 2006.
AR 616.  The Food & Wine Society newsletter also informed members
that Plaintiff and her husband would be hosting a Christmas party
for the Society at their home on December 9, 2006, from "6:00
p.m. - ???," which would include "food, music, wine, and lots of
fun."  AR 482.  In a later newsletter, the Society thanked the
Torreses for the Christmas party and reported it included "a
vertical tasting of wines . . . and a 'white elephant' gift
exchange."  AR 591.

      Defendants also attached pages from the website of
LDTorres.com that show the company designed several websites
between 2004 and 2006.  In addition, Defendants investigated
LDTorres.com on the Internet via "who.is."  AR 483.  Who.is noted
the domain name LDTorres.com was registered to Plaintiff's home
address and listed Plaintiff as the administrative, technical,
and billing contact for the company.  AR 518.  Defendants
concluded they "must assume [Plaintiff] is currently engaging in
her pre-disability occupation of Web Application Developer by
operating a web design company from home" because they had not
"received information from any *disinterested* party to the

9 - OPINION AND ORDER

contrary."  AR 483 (emphasis in original).

## III. Procedural Background

On February 12, 2007, Plaintiff filed a Complaint in this Court in which she alleged Defendants violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), and defamed Plaintiff.

On May 22, 2007, Plaintiff filed a First Amended Complaint in which she alleges Defendants violated ERISA when they denied her claim for LTD benefits.

On September 26, 2007, Defendants moved for summary judgment on the ground that Defendants did not abuse their discretion when they denied Plaintiff's claim for benefits under the Plan.  On October 22, 2007, Plaintiff filed a Cross-Motion for Summary Judgment.

## STANDARD OF REVIEW

Although this matter is before the Court on cross-motions for summary judgment, the usual summary judgment standard under Federal Rule of Civil Procedure 56 is not applicable to ERISA actions.  When reviewing a benefit plan's decision to deny benefits, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply."  *Bendixen v. Standard Ins.*

10 - OPINION AND ORDER

*Co.*, 185 F.3d 939, 942 (9ᵗʰ Cir. 1999).

## I.  Abuse of discretion vs. *de novo* review of ERISA plans generally.

When an ERISA plan provides the plan administrator with discretionary authority to determine eligibility for benefits, the district court ordinarily reviews the plan administrator's decision to grant or to deny benefits for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

"Abuse of discretion review applies to a discretion-granting plan even if the administrator has a conflict of interest . . . . [T]hat conflict [,however,] must be weighed as a factor in determining whether there is an abuse of discretion." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9ᵗʰ Cir. 2006)(quotation omitted).  "A district court when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage.  An egregious conflict may weigh more heavily . . . than a minor, technical conflict might." *Id*. at 968.

> The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history.  A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incor-

rectly or by making decisions against the weight
of evidence in the record.

*Id.* at 968-69 (citations omitted).

Plaintiff bears the burden to establish that she is disabled
and, therefore, is entitled to benefits.

Generally the district court only reviews

> the administrative record when considering whether
> the plan administrator abused its discretion, but
> may admit additional evidence on *de novo* review.
> That principle is consistent with *Tremain*, 196
> F.3d at 976-79, which permits extrinsic evidence
> on the question of a conflict of interest. The
> district court may, in its discretion, consider
> evidence outside the administrative record to
> decide the nature, extent, and effect on the
> decision-making process of any conflict of
> interest; the decision on the merits, though, must
> rest on the admini- strative record once the
> conflict (if any) has been established, by
> extrinsic evidence or otherwise.

*Id.* at 970. "[P]rocedural irregularities in processing an ERISA

claim do not usually justify *de novo* review." *Id.* at 972.

"There are, however, some situations in which procedural

irregularities are so substantial as to alter the standard of

review" such as when a plan administrator "engages in wholesale

and flagrant violations of the procedural requirements of ERISA,

and thus acts in utter disregard of the underlying purpose of the

plan." *Id.* at 971. In that instance, the Court must review *de

novo* the administrator's decision to deny benefits. *Id.*

"When a plan administrator has failed to follow a procedural

requirement of ERISA, the court may have to consider evidence

12 - OPINION AND ORDER

outside the administrative record."  *Id*. at 972-73.

> Even when procedural irregularities are smaller,
> . . . and abuse of discretion review applies, the
> court may take additional evidence when the
> irregularities have prevented full development of
> the administrative record.  In that way the court
> may, in essence, recreate what the administrative
> record would have been had the procedure been
> correct.

*Id*. at 973.

## II.  Abuse-of-discretion standard of review applies in this matter.

The parties agree the policy in this case contains an explicit grant of discretionary authority to Reliance as Claims Review Fiduciary to interpret the policy and to make decisions about eligibility for benefits.  Accordingly, the Court generally would review the denial of Plaintiff's benefits using the abuse-of-discretion standard.  Nevertheless, Plaintiff contends the Court should review *de novo* Defendants' decision to deny Plaintiff benefits under the Plan because (1) Defendants are operating under an inherent or structural conflict of interest and (2) Defendants denied Plaintiff the opportunity to address the accuracy and reliability of the two IMRs, the REA, and the Internet print-outs on which Defendants based their final decision to terminate Plaintiff's benefits.  Defendants, however, contend the Court should apply the abuse-of-discretion standard because Defendants provided consistent reasons "grounded on [a] reasonable basis" for denying Plaintiff's claims.

13 - OPINION AND ORDER

The Ninth Circuit has noted instances when the court should review *de novo* an administrator's decision to deny benefits because an administrator "engaged in wholesale and flagrant violations of the procedural requirements of ERISA, and thus act[ed] in utter disregard of the underlying purpose of the plan" are "rare." *Id.* at 971-72.  The Ninth Circuit, however, also has noted *de novo* review is "not mandated" in the "more ordinary situation in which a plan administrator has exercised discretion, but in doing so, has made procedural errors." *Id*. at 972.

In *Abatie*, the Ninth Circuit pointed out that it had previously found a plan administrator committed wholesale and fragrant violations of the procedural requirements of ERISA when "the administrator had kept the policy details secret from the employees, offered them no claims procedure, and did not provide them in writing the relevant plan information." *Id*. at 971 (citing *Blau v. Del Monte Corp*., 748 F.2d 1348 (9th Cir. 1984)). The Ninth Circuit declined to review *de novo* the administrator's denial of the plaintiff's claim even though the court concluded the administrator "tack[ed] on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level" and violating ERISA procedures. *Abatie*, 458 F.3d at 974. The Ninth Circuit concluded "this procedural violation must be weighed by the district court in deciding whether [the defendant]

14 - OPINION AND ORDER

abused its discretion." *Id*.

There is not any evidence here that Defendants kept the policy details secret from Plaintiff, failed to offer her a claims procedure, failed to provide her with the relevant plan information in writing, or committed similar procedural errors that rise to the level of "wholesale and flagrant violations of the procedural requirements of ERISA." The Court, therefore, concludes Defendants did not "act[] in utter disregard of the underlying purpose of the plan."

Accordingly, the Court reviews Defendants' denial of Plaintiff's claim for abuse of discretion.

**III. Level of Scrutiny**

Although the Court has determined it will review Defendants' decision for abuse of discretion, the Court must now determine "the . . . level of scrutiny with which to review the denial." *Peterson v. Fed. Express Corp. Long Term Disability Plan*, No. CV-05-1622-PHX-NVW, 2007 WL 1624644, at *19 (D. Ariz. June 4, 2007)(citing *Abatie*, 458 F.3d at 965). When the administrator of a benefit plan also operates as the funding source, a conflict of interest is "inherent" and generally the court must give it some weight "even if [the conflict is] merely formal and unaccompanied by indicia of bad faith" because it creates an "incentive to pay as little in benefits as possible to plan participants." *Abatie*, 458 F.3d at 965-66. In addition, when determining the level of

scrutiny to apply, courts also may consider factors such as evidence of malice, self-dealing, "a parsimonious claims-granting history," inconsistent reasons for denial, inadequate investigation into a claim, failure to credit a claimant's reliable evidence, a history of denying "benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record," and procedural irregularities. *Id. at* 968, 972. As noted, Defendants here have a structural or inherent conflict of interest. The Court, therefore, must give that fact "some weight" when reviewing Defendants' decision to deny Plaintiff's claim for benefits.

Plaintiff contends the Court should review Defendants' decision with a high level of scrutiny because Defendants' decision contained procedural irregularities that prohibited Plaintiff from fully developing the administrative record; *i.e.*, Defendants relied for the first time on the IMRs, the REA, and information from the Internet when they made their final decision denying Plaintiff's claim. Defendants, on the other hand, contend their conduct does not warrant a high level of scrutiny by the Court. Defendants rely on *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727 (9th Cir. 2006), to support their position.

In *Silver*, when the defendant benefit plan made its final

16 - OPINION AND ORDER

decision denying the plaintiff's claim, it relied for the first time on a report by a vocational expert who based his opinion on the plaintiff's medical records. *Id*. at 732. The court concluded it was not procedural error for the defendant to do so. The court reasoned it would "lead to an interminable back-and-forth between the plan administrator and the claimant" if the defendant had to disclose the vocational expert report prior to its final decision because disclosure would prompt a response from the employee, which would, in turn, require more evaluation. *Id*. The court also noted the defendant satisfied ERISA's requirement of full and fair review with respect to the vocational expert's report because the plaintiff had "enough information to prepare adequately for . . . an appeal to the federal courts" without disclosure of the report. *Id*.

Here, as in *Silver*, Defendants did not err when they failed to disclose the two IMRs and REA before issuing a final decision because such disclosure would have led to the "interminable back-and-forth" cautioned against in *Silver*. In addition, the IMRs and the REA were based on records that Plaintiff submitted and that she had a full opportunity to explain. This Court, therefore, concludes these reports do not constitute procedural irregularities and, therefore, do not justify a heightened level of scrutiny.

Defendants' reliance on information gleaned from the

17 - OPINION AND ORDER

Internet regarding Plaintiff's social activities, however, presents a different issue because Plaintiff could not anticipate Defendants' consideration of that information before Defendants' final denial of Plaintiff's claim. The Court, therefore, concludes Defendants' reliance on these new and unanticipated materials in its final decision constitutes a more significant procedural irregularity. Accordingly, the Court will apply a "moderate level" of scrutiny to Defendants' decision to deny Plaintiff's claim for benefits. *See, e.g., Peterson*, 2007 WL 1624644, at *20 (applying moderate level of scrutiny to the defendant benefit plan's decision to deny benefits when the court concluded the decision contained procedural irregularities).

## DISCUSSION

As noted, on January 19, 2007, Defendants denied Plaintiff's LTD claim on the ground that she did not establish she was unable to perform the material duties of *any* occupation. Defendants relied on the medical records provided by Plaintiff, the IMRs, the REA, and information obtained from the Internet.

**I.    Evidence submitted by Plaintiff for the first time.**

Plaintiff contends she should have a chance to rebut the new evidence Defendants relied on in their final denial of her claim; specifically, by introducing the Declarations of Plaintiff, her husband Lawrence Torres, and her son Travis

18 - OPINION AND ORDER

Osbourne in which they address Defendants' assertions that
Plaintiff was active in the Food & Wine Society of Clark County
and was running a web-design business from her home.  According
to Defendants, however, the Court must review only the materials
in the administrative record under the abuse-of-discretion
standard.  Thus, Plaintiff should not be allowed to submit
evidence that was not before the administrator.

Defendants again rely on *Silver* in which the Ninth Circuit
reiterated the restriction that a district court, when reviewing
the denial of an ERISA claim, may only consider evidence that was
in the record at the time of the administrator's decision.  The
court noted this restriction is "based on the principle that
federal district courts should not function as substitute plan
administrators, and . . . expanding the record on appeal would
frustrate the goal of prompt resolution of claims by the
fiduciary."  466 F.3d at 731 n.2.  In *Silver*, the Ninth Circuit
rejected the plaintiff's argument that "the district court
improperly admitted documents prepared by [the defendant] in the
course of the administrative appeal[,and, therefore, the
defendant] unfairly kept the record open for itself after closing
the record to [the plaintiff]."  *Id*. at 732.  The court reasoned
the defendant "*had* to wait until [the plaintiff] had submitted
all of his materials; for [the defendant] to do otherwise would
either undermine [the plaintiff's] ability to present all of his

19 - OPINION AND ORDER

supporting information or lead to an interminable back-and-forth between the plan administrator and the claimant." *Id.* (emphasis in original).

The Ninth Circuit reached a different conclusion, however, in *Saffon v. Wells Fargo & Company Long Term Disability Plan*, 511 F.3d 1206 (9th Cir. 2008).  In *Saffon*, the Ninth Circuit held the district court erred when it refused to consider evidence presented by a beneficiary that was not before the administrator even though the Ninth Circuit determined the abuse-of-discretion standard applied.  *Id.* at 1215.  The Ninth Circuit offered the following "additional guidance" for the parties and the district court:

> [On remand] the district court must give [the plaintiff] an opportunity to present evidence on the one issue that was newly raised by [the defendant] in its denial letter - the results of a Functional Capacity Evaluation or other objective evidence of whether she is totally disabled under the terms of the Plan.  [The plaintiff] need not present the results of such an evaluation, though she should be allowed to do so if she wishes. However, [the plaintiff] may, instead, offer evidence (from Dr. Kudrow or some other qualified expert) that such evidence is not available or not particularly useful in diagnosing her ability to return to her job.

*Id.* at 1215-16.

Similarly in *Neathery v. Chevron Texaco Corporation Group Accident Policy No. OK826458*, the district court applied the abuse-of-discretion standard, reviewed the defendant benefit plan's decision to deny the plaintiff's claim, and concluded it

20 - OPINION AND ORDER

could properly consider extrinsic evidence "when procedural irregularities during the administrative review affect administrative review by, for example, preventing a full development of the administrative record."  No. 05 CV 1883 JM (CAB), 2007 WL 1110904, at *3 (S.D. Cal. Apr. 9, 2007)(citing *Abatie*, 458 F.3d at 973).  The district court noted it also could review evidence that was not before the administrator "even when a defendant's decision is reviewed for abuse of discretion" so that the court could "'recreate what the administrative record would have been had the procedure been correct.'"  *Id.* (quoting *Abatie*, 458 F.3d at 973).

Here Defendants' reliance on the IMRs and the REA in making their final decision is similar to the conduct of the defendants in *Silver*.  As noted, in *Silver* the Ninth Circuit concluded the defendant had to wait for the plaintiff to produce all of his supporting medical evidence before the defendant could develop the vocational expert's opinion on which it relied.  If the plaintiff had been allowed to present further evidence in response to the vocational expert's opinion, the defendant would have had to issue a second opinion to address the additional evidence, which, in turn, would lead to "an interminable back-and-forth between the plan administrator and the claimant." *Silver*, 466 F.3d at 732.  Here Defendants commissioned the IMRs and the REA based on all of the medical records that Plaintiff

21 - OPINION AND ORDER

submitted to support her claim.  Defendants had to wait until
Plaintiff's supporting evidence was complete before conducting an
IMR and REA.  Accordingly, the Court concludes Defendants'
reliance on the IMRs and REA when making their final decision was
not a procedural irregularity that justifies the admission of
additional extrinsic evidence by Plaintiff at this stage.

As noted, Defendants' reliance on information obtained from
the Internet, however, is the kind of information that
constitutes a different and new basis for denial that was not
previously produced by Plaintiff or referenced by Defendants in
their decisionmaking process.  Because Plaintiff has not had an
opportunity to respond to this new information, the Court will
review and consider the Declarations of Plaintiff, Lawrence
Torres, and Travis Osbourne as they bear on this "Internet
information."

## II.  Evaluation of the evidence.

Applying the abuse-of-discretion standard of review, the
issue before the Court is whether Defendants abused their
discretion when they denied Plaintiff's disability claim.  An
administrator's decision is an abuse of discretion when it is
"'without reason, unsupported by substantial evidence or
erroneous as a matter of law.'"  *Riffey v. Hewlett-Packard Co.
Disability Plan*, No. CIV. S-05-1331 FCD/JFM, 2007 WL 946200, at
*14 (E.D. Cal. Mar. 27, 2007)(quoting *Abnathya v. Hoffman-*

22 - OPINION AND ORDER

*LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).  If an administrator's decision has a rational basis, the court may not substitute its judgment for that of the administrator when determining eligibility for plan benefits even if the court disagrees with the administrator's decision.  *Id.*  Under the abuse-of-discretion standard, the court's inquiry "is not into whose interpretation of the evidence is most persuasive, but whether the plan administrator's interpretation is unreasonable."  *Clark v. Wash. Teamsters Welfare Trust*, 8 F.3d 1429, 1432 (9th Cir. 1993)(quotation omitted).  Finally, "the focus of an abuse of discretion inquiry is the administrator's analysis of the administrative record - it is not an inquiry into the underlying facts."  *Riffey*, 2007 WL 946200, at *14 (citing *Alford v. DCH Found. Group Long-Term Disability Plan*, 311 F.3d 955, 957 (9th Cir. 2002)).

Here Defendants had conflicting reports from some of Plaintiff's treating physicians and Defendants' reviewing physicians.  "This is typical of the evidence used in disability determinations.  Reasonable people can disagree on whether [Plaintiff] was disabled for purposes of the ERISA plan.  Because that is so, the administrator cannot be characterized as acting arbitrarily in taking the view that [Plaintiff] was not."  *Jordan v. Northrop Grumman & Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004).  As in *Jordan*, Defendants had statements from

23 - OPINION AND ORDER

Plaintiff's doctors that she was disabled and opinions from
Defendants' doctors that Plaintiff was not entirely unable to
work even though she may suffer from a degenerative disease.
Although Plaintiff complained to numerous doctors about various
issues including back and joint pain and fatigue, the record
contains little objective evidence to support the level of pain
that Plaintiff reported.  For example, an MRI performed in March
2005 on Plaintiff's right knee showed "patella femoral marked
osteoarthritis and medial compartment mild osteoarthritis."  AR
836.  An x-ray of Plaintiff's left knee at the same time showed
"mild medial compartment joint space narrowing, minimal tibial
spine spurring, [and] no joint effusion."  AR 836.  Susan
Kranzpiller, M.D., one of Plaintiff's treating physicians, opined
the "impression [from the MRI and x-rays] is mild degenerative
disease."  AR 836.  Similarly, in February 2005, Patricia
Mizutani, M.D., an examining physician, opined Plaintiff had
"mild degenerative disease."  AR 1164.  In June 2005, Peter
Bonifede, M.D., another one of Plaintiff's treating physicians,
noted Plaintiff had limited range of motion and "flexion" in her
back as well as 6 of 18 fibromyalgia tender points.  AR 843.
Nevertheless, Dr. Bonifede "strongly encouraged [Plaintiff] to
become more active and do the exercises previously given to her
for her back, and . . . indicated that her chronic back pain will
become worse if she becomes less active."  AR 843.  On June 22,

24 - OPINION AND ORDER

2005, Keith Bernstein, M.D., interpreted an MRI of Plaintiff's
back and neck and reported it showed "mild right foraminal
narrowing [at the C2-3 level,] but this does not compress the
nerve root." AR 1139. Dr. Bernstein further reported the MRI
revealed at the C4-5 through C6-7 levels "a small disc bulge and
osteophyte formation present[, which] minimally narrows the canal
at these levels [and] mild left C6-7, moderate right C5-6, mild
left C5-6, mild right C4-5, and mild-to-moderate left C4-5
foraminal narrowing." AR 1139. On January 11, 2006, Robert S.
Djergaian, M.D., one of Plaintiff's treating physicians, reviewed
an MRI of Plaintiff's back and noted it showed "a small
retrolisthesis at L4-5, but the central extrusion at that level
seen in 2003 was no longer seen." AR 1354. Dr. Djergaian
further noted an EMG and nerve conduction studies showed

> some borderline slowing of the right median nerve
> at the wrist consistent with mild carpal tunnel
> syndrome, but no slowing of the ulnar nerve at the
> right elbow or slowing of the left median nerve.
> There was no denervation seen in the multiple
> right lower extremity muscles sampled . . . . So
> there was no evidence of radiculopathy.

AR 1354. Dr. Djergaian reported it was "difficult to interpreter
[*sic*] manual muscle testing in that [Plaintiff] appears
uncomfortable. She is also not giving full resistance with
dorsiflexion and eversion." AR 1355. Dr. Djergaian told
Plaintiff that "she really needs to work on mobilization and
activation . . . [because] she has severe flexibility as well as

25 - OPINION AND ORDER

weakness and conditioning problems."  AR 1355.  On January 27,

2006, Govind Singh, M.D., one of Plaintiff's treating physicians,

noted he was concerned about Plaintiff's condition, but "need[ed]

a diagnosis to guide further Rx."  AR 1189.

As the Ninth Circuit explained in *Jordan*, because

> a person has a true medical diagnosis does not by
> itself establish disability.  Medical treatises
> list medical conditions from amblyopia to
> zoolognia that do not necessarily prevent people
> from working.  After a certain age, most people
> have pain, with or without palpation, in various
> parts of their body, and they often have other
> medical conditions.  Sometimes their medical
> conditions are so severe that they cannot work;
> sometimes people are able to work despite their
> conditions; and sometimes people work to distract
> themselves from their conditions.  Physicians have
> various criteria, some objective, some not, for
> evaluating how severe pain is and whether it is so
> severe as to be disabling.  It is not for [the]
> court to decide [a claimant's conditions] should
> be treated by ERISA plan administrators as
> disabling in a particular case.  That is a medical
> and administrative judgment committed to the
> discretion of the plan administrator based on a
> fair review of the evidence.

*Jordan*, 370 F.3d at 880.

Applying the abuse-of-discretion standard and a moderate

level of scrutiny, the Court finds after a review of the record

as a whole, including Plaintiff's supplemental materials, there

is a reasonable basis for Defendants' conclusion that Plaintiff

was not totally disabled within the meaning of that term as

defined by the Plan.  The Court, therefore, concludes Defendants

did not abuse their discretion when they denied Plaintiff's

26 - OPINION AND ORDER

request for LTD benefits.

Accordingly, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Summary Judgment.


## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (#22)**, DENIES** Plaintiff's Cross-Motion for Summary Judgment (#26), and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 14th day of March, 2008.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


27 - OPINION AND ORDER