IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONNA OSBOURNE TORRES,          07-CV-202-BR

      Plaintiff,

                                     OPINION AND ORDER

v.                                Portland Division

RELIANCE STANDARD LIFE
INSURANCE COMPANY; MATRIX
ABSENCE MANAGEMENT, INC.; and
TEKTRONIX, INC., LONG TERM
DISABILITY PLAN,

      Defendants.

SAMUEL T. STANKE
1400 S.W. Montgomery Street
Portland, OR 97201
(503) 224-1127

      Attorney for Plaintiff

SAMUEL K. ANDERSON
Davis Rothwell Earle & Xochihua, PC
1900 Wells Fargo Center
1300 S.W. Fifth Avenue
Portland, OR 97201-5604
(503) 222-4422

JOSHUA BACHRACH
Rawle & Henderson, LLP
The Widener Building
One South Penn Square
16th Floor
Philadelphia, PA 19107
(215) 575-4200

      Attorneys for Defendants

**BROWN, Judge.**

      This matter comes before the Court on Plaintiff's Motion (#69) for Summary Judgment and Defendants' Cross-Motion (#76) for Summary Judgment, both of which address the question whether Defendants abused their discretion when they decided to terminate the long-term disability benefits they had been paying to Plaintiff.

      For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Cross-Motion for Summary Judgment.

## <u>BACKGROUND</u>

      Plaintiff Donna Osbourne Torres began working for Tektronix, Inc., on March 25, 1996, and worked there until October 31, 2003. As a benefit of her employment, Plaintiff was a participant in the Tektronix Long Term Disability (LTD) Plan.  Defendant Reliance Standard Life Insurance Company is the insurer and "Claims Review Fiduciary" of the Plan.  Defendant Matrix Absence

2 - OPINION AND ORDER

Management, Inc., also administers the Plan.

## I.    Plan Language

The Plan provides Defendants will pay a "Monthly Benefit" if
an insured

> (1)    is Totally Disabled as a result of a Sickness
>        or Injury covered by this Policy;
>
> (2)    is under the regular care of a Physician;
>
> (3)    has completed the Elimination Period; and
>
> (4)    submits satisfactory proof of Total
>        Disability to us.

Administrative Record (AR) 725.  The Plan defines "Totally
Disabled" as

> a result of Injury or Sickness:
>
> (1)    during the Elimination Period and for the
>        first 24 months for which a Monthly Benefit
>        is payable, an Insured cannot perform the
>        material duties of his/her regular
>        occupation; . . .
>
> (2)    after a Monthly Benefit has been paid for 24
>        months, an insured cannot perform the
>        material duties of any occupation.  Any
>        occupation is one that the Insured's
>        education, training or experience will
>        reasonably allow.

AR 717.  The Plan includes the following limitation:

> Monthly Benefits for Total Disability caused by or
> contributed to by mental or nervous disorders will
> not be payable beyond an aggregate lifetime
> maximum duration of twenty-four (24) months.

* * *

3 - OPINION AND ORDER

> Mental or Nervous Disorders are defined to include
> disorders which are diagnosed to include a
> condition such as:
>
> * * *
>
> (5) depressive disorders;
> (6) anxiety disorders.

AR 729.

## II.  Factual Background

In 1999 or 2000, Plaintiff moved from the position of fourth-level engineer with Tektronix to a job as a web applications developer/systems analyst, which is a sedentary "desk job."

On March 21, 2004, Plaintiff filed a claim for LTD benefits under the Plan alleging she was unable to perform her job due to back pain.  On June 1, 2004, Defendants approved Plaintiff's claim and found Plaintiff satisfied the Plan's definition of Total Disability for her occupation.  Defendants informed Plaintiff that "[p]eriodic documentation of [her] disability status will be required for further benefit consideration. Objective documentation of [her] continuous disability must be provided by the physician who is treating [her] and [be] satisfactory to us."  AR 303.  Defendants further informed Plaintiff that the Plan "stipulates that in order to be eligible for Long Term Disability Benefits beyond 24 months [she] must be totally disabled from performing the material duties of Any Occupation . . . [and she] will reach the 24th month on April 29,

4 - OPINION AND ORDER

2006."  AR 304.

In November 2005, Defendants attempted to schedule an Independent Medical Examination (IME) for Plaintiff with Thomas J. Rosenbaum, M.D.  Plaintiff, however, objected to Dr. Rosenbaum performing such an examination because he had examined her previously in relation to a worker's compensation claim and, according to Plaintiff, reported certain aspects of that examination incorrectly.  Plaintiff appeared for the examination with a tape recorder with the intention of recording it. Dr. Rosenbaum refused to allow the examination to be recorded, and the exam did not proceed.  AR 1625-26.

On February 8, 2006, Plaintiff sent a letter to Defendants identifying seven conditions that allegedly contributed to her disability.

On March 13, 2006, Defendants sent Plaintiff a letter reminding her that a different definition of "Totally Disabled" would apply for purposes of the Plan as of April 29, 2006; that is, she would be entitled to continue to receive monthly benefits only if she was "totally disabled from performing the material duties . . . of Any Occupation."  AR 1085.  Defendants also stated:

> We have completed our investigation to determine
> your continued eligibility for Long Term
> Disability benefits.  Based on the medical
> information contained in your file, you are
> totally disabled from performing any occupation as
> defined in the aforementioned policy provision.

> The medical documentation on file currently
> supports your disability through June 30, 2006.

AR 1085.  Defendants noted they would be "requesting updated

medical documentation from [Plaintiff's doctors] in order to

evaluate [Plaintiff's] entitlement to benefits beyond June 30,

2006."  AR 1085.

On March 28, 2006, Defendants requested updated medical

records from the doctors Plaintiff identified in her

February 8, 2006, letter.  On May 9, 2006, Defendants again

requested updated medical records from these doctors because they

did not respond to Defendants' March 28, 2006, request.  Although

Govid Singh, M.D., then sent to Defendants the medical records of

Plaintiff through February 28, 2006; Dr. Bonafede informed

Defendants that he did not have any current records for

Plaintiff; and Robert Djergaian, M.D., informed Defendants on

May 22, 2006, that he last treated Plaintiff on January 11, 2006;

the doctors from Rebound PT still failed to respond to

Defendants' request.

On June 5, 2006, and June 16, 2006, Defendants once again

requested Plaintiff to provide them with updated medical

information, and Defendants set a deadline of July 17, 2006.

AR 477.  Defendants advised Plaintiff that the Plan "requires

. . . [Defendants] have proof that [Plaintiff is] under the

regular care of a Physician and the Plan requires that

[Plaintiff] submit proof of Total Disability."  AR 1045.

6 - OPINION AND ORDER

On June 19, 2006, Defendants received a response from
Rebound PT that Plaintiff's last date of treatment was in January
2006.  On June 29, 2006, based on information in Plaintiff's
Social Security paperwork, Defendants requested information from
Dr. Long and Marlene Dietrich, M.D.  By July 17, 2006, however,
Defendants still had not received any updated information.

On August 2, 2006, Defendants advised Plaintiff that they
had received the May 22, 2006, response from Dr. Djergaian and
the June 19, 2006, response from Rebound PT, both of which
indicated Plaintiff's last date of treatment was in January 2006.
AR 1014, 1016.  Defendants also noted they had requested
information on June 29, 2006, from Dr. Long and Dr. Dietrich, but
they had not received information from either doctor.
Accordingly, Defendants informed Plaintiff that they were
suspending her ongoing benefit payments because the medical
information in their file did not support such payments.
AR 1013-16.

In response, Plaintiff submitted updated medical records on
August 28 and September 5, 2006, to support her claim for ongoing
benefits.

Marianne P. Lubrecht, R.N., B.S.N., conducted on Defendants'
behalf a medical review of Plaintiff's records, including those
submitted by Plaintiff in August and September 2006.  On
September 6, 2006, Lubrecht concluded:

7 - OPINION AND ORDER

> Records continue to document that claimant and her husband continue to search for a definable diagnosis and cause for her many complaints. Testing continues to be non-revealing.  Work impairment with restrictions and limitations less than sedentary remain supported due to somatic complaints with significant psychiatric component. Prognosis is guarded, as claims appears unable to accept and treat the psychiatric factors.  In the absence of psychiatric contribution sedentary restrictions and limitations would be supported.

AR 478.

On September 8, 2006, Defendants sent Plaintiff a letter notifying her that they were terminating her LTD benefits effective August 1, 2006.  AR 941-43.  Defendants noted "[p]reviously [Plaintiff's] benefits were approved through July 31, 2006, based on medical documentation received from Dr. Robert Djergaian, Dr. Govid Singh, and Dr. Alan Newman." AR 941.  After receiving "all available updated medical records from multiple providers," however, Defendants' medical department determined that "absent [Plaintiff's] current psychiatric contributions, and based on physical conditions only, [Plaintiff] would be able to perform work of a sedentary nature."  AR 941-42. Defendants pointed out the issue of "psychiatric contributions" because Plaintiff had already exhausted the 24 months of benefits available under the LTD plan when mental conditions cause or contribute to the claimant's disability.

Plaintiff appealed the termination of her benefits.

On January 14, 2007, Anne MacGuire, M.D., provided at

Defendants' request an independent medical review (IMR) of all
the medical records produced by Plaintiff, including those
produced by her providers in August and September 2006.  AR 485-
492.  Dr. MacGuire noted diagnoses of chronic pain syndrome,
degenerative arthritis of the lumbar spine, mild degenerative
arthritis of the cervical spine, and "bilateral knees with
improving osteoporosis."  AR 490.  On the other hand,
Dr. MacGuire found the electrical studies of Plaintiff's right
median nerve "were so minimal that [she] would hesitate to even
call it carpal tunnel syndrome."  AR 490.

Dr. MacGuire concluded "there is no evidence for a
neuropathic process in any of the history and multiple physical
exams.  In my opinion this diagnosis [of fibromyalgia] is not
warranted."  AR 491.  With respect to Plaintiff's prognosis,
Dr. MacGuire noted

> degenerative arthritis in the lumbar spine, knees
> and improving osteoporosis are all common chronic
> problems that most adults deal with. . . .  Most
> adults over the age of 40 have changes consistent
> with mild to moderate degenerative arthritis of
> the lumbar spine and weight bearing joints.  These
> are certainly not shockingly severe conditions.

AR 491.  As for Plaintiff's prognosis for degenerative arthritis,
Dr. MacGuire stated "it does not necessarily progress.  Fitness,
caution with lifting and activity are essential for maintenance
and control of symptoms."  AR 491.  Dr. MacGuire further reported
the prognoses for Plaintiff's osteoporosis and for her chronic

9 - OPINION AND ORDER

pain management are "excellent" and any fibromyalgia is not a
disabling condition.  AR 491.  Although Dr. MacGuire concluded
Plaintiff should not participate in repetitive bending, twisting,
or lifting objects that weigh more than 35 pounds on a regular
basis, Plaintiff was not restricted as to sitting, standing,
walking, driving, fine motor control, or hand activities.
AR 491.

On January 16, 2007, Kevin P. Hayes, M.D., M.B.A., provided
to Defendants an IMR psychiatric evaluation based on his review
of all the medical records produced by Plaintiff, including those
produced by her providers in August and September 2006.  AR 534-
541.  Dr. Hayes opined Plaintiff's medical records do "not
support the presence of any severe impairing psychiatric illness
for any period of time since the date of loss."  AR 539.
Dr. Hayes noted there was

> evidence of possible selective history given [by
> Plaintiff] to . . . providers . . . .  [For
> example, Plaintiff] denied any previous back
> injury to one provider but later reported a
> significant back injury to another provider that
> had occurred in 1996.  She seemed to have require
> [*sic*] rather concentrated and intensive treatment
> for that injury.

AR 539.  Dr. Hayes also reported

> [t]he records suggest [Plaintiff] is very invested
> in establishing a temporal relationship between
> her back pain and the lifting of a monitor at
> work. . . .  Some providers have indicated that
> there is evidence of psychological overlay, but
> this is a generic catchall which could be
> inclusive of symptoms of a somatoform condition,

10 - OPINION AND ORDER

> factitious disorder or even malingering. . . .
> Given the inconsistencies noted in the records, I
> cannot discern [Plaintiff] has had or currently
> has any severe psychiatric condition. . . .
> [T]here is considerable concern about the
> inconsistencies that are reflected in the claim
> and the differences in histories gathered by
> various providers.

AR 540.

On January 18, 2007, Vocational Expert (VE) Jody Barach

provided Defendants with a Residual Employability Analysis (REA)

based on her review of the medical records submitted by Plaintiff

as well as Plaintiff's job description and previous work

experience.  AR 737-38.  VE Barach opined Plaintiff "has

transferable skills" pursuant to the United States Department of

Labor Dictionary of Occupational Titles that would allow her to

perform work as a programmer analyst, systems analyst, user-

support analyst, desktop publisher, and/or network-control

operator.  AR 737-38.

On January 19, 2007, Defendants informed Plaintiff by letter

that they adhered to their September 2006 decision to terminate

her benefits.  Defendants relied on their own assessment of the

medical records produced by Plaintiff and the opinions of

Dr. MacGuire, Dr. Hayes, and VE Barach.  Defendants also relied

on information gleaned from an Internet search that

> resulted in [Defendants'] discovery that
> [Plaintiff] is quite active in the Food & Wine
> Society of Clark County . . . .  [F]or example,
> [Plaintiff] . . . was physically capable of
> coordinating and participating in a six-hour club

11 - OPINION AND ORDER

outing on October 14, 2006, *and she apparently planned to do so in advance.*

AR 481 (emphasis in original).  Defendants attached to their January 17, 2007, letter various print-outs of Internet pages describing the October 14, 2006, outing and requesting members of the society to "RSVP to Donna Torres."  AR 559.  Defendants also attached the October 2006 newsletter of the Food & Wine Society of Clark County in which it was reported that Plaintiff attended a wine-sharing dinner on September 15, 2006.  AR 616.  The Food & Wine Society newsletter also informed members that Plaintiff and her husband would be hosting a Christmas party for the Society at their home on December 9, 2006, from "6:00 p.m. - ???," which would include "food, music, wine, and lots of fun."  AR 482.  In a later newsletter, the Society thanked the Torreses for the Christmas party and reported it included "a vertical tasting of wines . . . and a 'white elephant' gift exchange."  AR 591. Defendants also attached pages from the website of LDTorres.com that show the company designed several websites between 2004 and 2006.  In addition, Defendants investigated LDTorres.com on the Internet via "who.is."  AR 483.  Who.is noted the domain name LDTorres.com was registered to Plaintiff's home address and listed Plaintiff as the administrative, technical, and billing contact for the company.  AR 518.  Based on this information from the Internet, Defendants concluded they "must assume [Plaintiff] is currently engaging in her pre-disability occupation of Web

12 - OPINION AND ORDER

Application Developer by operating a web design company from home" because they had not "received information from any *disinterested* party to the contrary."  AR 483 (emphasis in original).

## III. Procedural Background

On February 12, 2007, Plaintiff filed a Complaint in this Court in which she alleged Defendants violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), and defamed Plaintiff.

On May 22, 2007, Plaintiff filed a First Amended Complaint in which she alleged Defendants violated ERISA when they terminated her claim for LTD benefits.

On September 26, 2007, Defendants moved for summary judgment on the ground that Defendants did not abuse their discretion when they terminated Plaintiff's benefits under the Plan.  On October 22, 2007, Plaintiff filed a Cross-Motion for Summary Judgment.

On March 14, 2008, the Court issued an Opinion and Order in which it concluded the abuse-of-discretion standard with a moderate level of scrutiny applied.  The Court also noted Plaintiff did not have an opportunity to respond at the administrative level to the information that Defendants gleaned from the Internet and on which they relied when they made their January 19, 2007, final determination.  Accordingly, the Court

13 - OPINION AND ORDER

determined it would review and consider the Declarations of Plaintiff, Lawrence Torres, and Travis Osbourne as they related to the "Internet information" in the process of deciding the parties' motions.  Ultimately, the Court granted Defendants' Motion for Summary Judgment and denied Plaintiff's Cross-Motion for Summary Judgment.  On that same date, the Court entered a Judgment dismissing this matter with prejudice.  On April 7, 2008, Plaintiff filed an appeal.

On April 9, 2009, the Ninth Circuit reversed and remanded the matter to this Court for "development of the record concerning whether Reliance Standard's policy requires a showing of continuing eligibility and whether the insurer can require periodic updates to assure continuing eligibility" and for reconsideration of whether Defendants abused their discretion, particularly in light of the fact that Defendants had "admitted" Plaintiff was totally disabled early in the claim process.

Once again the parties filed cross-motions for summary judgment.

**STANDARD OF REVIEW**

In its Opinion remanding this matter, the Ninth Circuit held this Court correctly determined an abuse-of-discretion standard of review with a "moderate level" of scrutiny applies.  *Torres v. Reliance Standard Life Ins. Co.*, 319 Fed. Appx. 602, 603 (9th

14 - OPINION AND ORDER

Cir. Mar. 16, 2009).  Accordingly, the Court applies the same standard of review to its evaluation of the issues on remand.

The Ninth Circuit also concluded it "was procedural error for Reliance Standard to rely upon information gleaned from the Internet regarding Plaintiff's social activities in its final denial letter."  *Id*. at 603 (citing *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 871 (9th Cir. 2008)).  In *Saffon*, the Ninth Circuit held the district court erred when it refused to consider evidence presented by a beneficiary that was not before the administrator even though the Ninth Circuit determined the abuse-of-discretion standard applied.  *Id*. at 1215.  The Ninth Circuit offered the following "additional guidance" for the parties and the district court:

> [On remand] the district court must give [the plaintiff] an opportunity to present evidence on the one issue that was newly raised by [the defendant] in its denial letter - the results of a Functional Capacity Evaluation or other objective evidence of whether she is totally disabled under the terms of the Plan.  [The plaintiff] need not present the results of such an evaluation, though she should be allowed to do so if she wishes.  However, [the plaintiff] may, instead, offer evidence (from Dr. Kudrow or some other qualified expert) that such evidence is not available or not particularly useful in diagnosing her ability to return to her job.

*Id*. at 1215-16.

Similarly, in *Neathery v. Chevron Texaco Corporation Group Accident Policy No. OK826458*, the district court applied the abuse-of-discretion standard, reviewed the defendant benefit

15 - OPINION AND ORDER

plan's decision to deny the plaintiff's claim, and concluded it could properly consider extrinsic evidence "when procedural irregularities during the administrative review affect administrative review by, for example, preventing a full development of the administrative record."  No. 05 CV 1883 JM (CAB), 2007 WL 1110904, at *3 (S.D. Cal. Apr. 9, 2007)(citing *Abatie*, 458 F.3d at 973).  The district court noted it also could review evidence that was not before the administrator "even when a defendant's decision is reviewed for abuse of discretion" so that the court could "'recreate what the administrative record would have been had the procedure been correct.'"  *Id.* (quoting *Abatie*, 458 F.3d at 973).

Accordingly, the Court considers on remand both the information that Defendants gleaned from the Internet as well as the Declarations of Plaintiff, Lawrence Torres, and Travis Osbourne controverting that information in order to "recreate what the administrative record would have been had the procedure been correct."  *Id.*

## DISCUSSION

**I.  Reliance Standard's policy requires a showing of continued eligibility, and Defendants can require periodic updates from Plaintiff to assure continuing eligibility.**

As noted, the Ninth Circuit remanded the matter to this Court "for development of the record concerning whether Reliance

16 - OPINION AND ORDER

Standard's policy requires a showing of continuing eligibility and whether the insurer can require periodic updates to assure continuing eligibility."

Defendants contend Reliance Standard's policy requires a showing of continued eligibility and Defendants can require periodic updates to assure continuing eligibility.  To support their contention, Defendants point to the language of the policy that provides for a monthly benefit and that requires a claimant to submit satisfactory proof of total disability to receive the monthly benefit.  AR 725.  Moreover, Defendants note the policy provides a claimant's "[m]onthly benefit will stop on the earliest of . . . the date the Insured ceased to be Totally Disabled . . . or the date the Insured fails to furnish the required proof of Total Disability."  AR 726.  Plaintiff, however, does not address the meaning of this policy language nor Defendants' reliance on this language.

Because the policy plainly authorizes Defendants to terminate benefits if an insured ceases to be "totally disabled" or fails to furnish the required proof of "total disability," the Court concludes Defendants can require a showing of Plaintiff's continued disability and periodic updates from Plaintiff to assure continuing eligibility.  As the Fifth Circuit noted,

> [a] contrary holding would basically prohibit a
> plan fiduciary from ever terminating benefits if
> it later discovered evidence that the ERISA
> plaintiff was not disabled at the time of the

> initial grant of benefits.  More importantly to
> plan participants and beneficiaries, such a rule
> would have a chilling effect on the promptness of
> granting initial benefits in the first place.
> This we are unwilling to do.  A plan fiduciary
> that has granted plan benefits to a participant or
> beneficiary is not estopped from terminating those
> benefits merely because there is no evidence that
> a substantial change in the covered employee's
> medical condition occurred after the original
> grant of benefits.

*Ellis v. Liberty Life Assur. Co. of Boston,* 394 F.3d 262, 274

(5th Cir. 2004).

**II.  To terminate Plaintiff's benefits, Defendants are not
      required to establish that Plaintiff's condition improved
      after Defendants concluded she was entitled to benefits in
      March 2006.**

Although it is not entirely clear, Plaintiff appears to

contend Defendants must establish Plaintiff's condition improved

after Defendants' March 2006 finding of eligibility in order to

terminate Plaintiff's ongoing benefits.  Plaintiff, however, does

not cite any policy language or Ninth Circuit authority that

requires such a showing under circumstances such as presented

here nor could the Court find any such authority.

As noted, the Fifth Circuit held in *Ellis* that "[a] plan

fiduciary that has granted plan benefits to a participant or

beneficiary is not estopped from terminating those benefits

merely because there is no evidence that a substantial change in

the covered employee's medical condition occurred after the

original grant of benefits." 394 F.3d at 274.  At least three

district courts in the Ninth Circuit have followed the reasoning in *Ellis* and concluded a "plan fiduciary need not rely . . . upon evidence of improvement to justify a termination of existing benefits. [For example, a] plan fiduciary should be able to rely upon recently acquired evidence showing that an employee was never disabled to begin with." *Taylor v. SmithKline Beecham Corp.*, 629 F. Supp. 2d 1032, 1042 (C.D. Cal. 2009)(citing *Ellis*, 394 F.3d at 274). *See also Sotak v. Highmark Life Ins. Co.*, NO. CV-04-1062-PHX-SMM, 2006 WL 798868, at *4 (D. Ariz. Mar. 28, 2006)("This Court is persuaded by the reasoning set forth in *Ellis* and finds that the burden of proof remains with Plaintiff to establish that she is still disabled under the Policy."); *Refkin v. N.Y. Life Ins.*, NO. C 04-04953 CRB, 2005 WL 2086073, at *5 (E.D. Cal. Aug, 29, 2005)("ERISA does not require defendant to prove that Refkin's condition has changed since it last approved her benefits.").

The Court finds the reasoning of *Ellis* persuasive and concludes in the absence of contrary guidance by the Ninth Circuit that Defendants here need not establish Plaintiff's condition improved or substantially changed in order for Defendants to continue to evaluate Plaintiff's eligibility for ongoing benefits under the LTD plan and, if warranted, to decide to terminate those benefits based on the record as a whole. Nevertheless, when determining whether Defendants abused their

19 - OPINION AND ORDER

discretion in terminating Plaintiff's benefits, the Court necessarily will consider the record as a whole including whether Plaintiff's condition improved or substantially changed between the time Defendants initially deemed her eligible for benefits and the time Defendants reversed their decision.

## III. Evaluation of the Evidence

Applying the abuse-of-discretion standard of review with moderate scrutiny, this Court must determine whether Defendants abused their discretion when, despite having found Plaintiff "totally disabled" on March 13, 2006, they terminated her benefits effective August 1, 2006, on the basis that the record did not show Plaintiff was totally disabled as of that date.

An administrator's decision is an abuse of discretion when it is "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Riffey v. Hewlett-Packard Co. Disability Plan*, No. CIV. S-05-1331 FCD/JFM, 2007 WL 946200, at *14 (E.D. Cal. Mar. 27, 2007)(quoting *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)). If an administrator's decision has a rational basis, the court may not substitute its judgment for that of the administrator's as to a claimant's eligibility for plan benefits even if the court disagrees with the administrator's decision. *Id.* Under the abuse-of-discretion standard, the court's inquiry "is not into whose interpretation of the evidence is most persuasive, but

whether the plan administrator's interpretation is unreasonable." *Clark v. Wash. Teamsters Welfare Trust*, 8 F.3d 1429, 1432 (9th Cir. 1993)(quotation omitted). Finally, "the focus of an abuse of discretion inquiry is the administrator's analysis of the administrative record - it is not an inquiry into the underlying facts." *Riffey*, 2007 WL 946200, at *14 (citing *Alford v. DCH Found. Group Long-Term Disability Plan*, 311 F.3d 955, 957 (9th Cir. 2002)).

Defendants emphasize they received information after their March 13, 2006, decision that called into question whether Plaintiff was, in fact, "totally disabled" from "any occupation." Among other things, Defendants concluded from this later information that Plaintiff had a level of activity much higher than she was reporting to her doctors, and, therefore, Plaintiff's reports of pain and fatigue to her treating physicians were not credible.

For example, Defendants point to the fact that Dr. Singh reported on August 31, 2006, that Plaintiff's hypothyroidism and anemia were stable and that her "ACE level [was] normal." AR 1550. Similarly, Dr. Singh reported on August 25, 2006, that Plaintiff's hypothyroidism "as [*sic*] improved." AR 1537. In addition, Dr. Dietrich did not identify in her April 25, 2006, examination that carpal-tunnel syndrome was an issue for Plaintiff. AR 1571. Defendants also noted James Ockner, M.D.,

21 - OPINION AND ORDER

conducted an MRI cervical spine examination of Plaintiff on
April 12, 2006, and concluded Plaintiff suffered only "mild
cervical spine degenerative changes with mild left foraminal
stenosis at C4-5 and C5-6."  AR 1574.  Defendants also rely on
Dr. MacGuire's opinion and analysis developed during the
administrative appeal.  Defendants note Dr. MacGuire based her
opinion on Plaintiff's entire medical record, including records
produced after Defendants' March 13, 2006, finding that Plaintiff
was eligible for benefits.

Plaintiff, in turn, contends Defendants must explain why
they gave greater weight to Dr. MacGuire's opinion than to the
opinions of Plaintiff's treating physicians.  The Supreme Court,
however, has held ERISA "plan administrators are not obliged to
accord special deference to the opinions of treating physicians."
*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003).
In addition, ERISA does not "impose a heightened burden of
explanation on administrators when they reject a treating
physician's opinion."  *Id*. at 831.  As Defendants point out, the
Ninth Circuit explained in *Jordan v. Northrop Grumman & Welfare
Benefit Plan* that merely because

> a person has a true medical diagnosis does not by
> itself establish disability.  Medical treatises
> list medical conditions from amblyopia to
> zoolognia that do not necessarily prevent people
> from working.  After a certain age, most people
> have pain, with or without palpation, in various
> parts of their body, and they often have other
> medical conditions.  Sometimes their medical

22 - OPINION AND ORDER

> conditions are so severe that they cannot work;
> sometimes people are able to work despite their
> conditions; and sometimes people work to distract
> themselves from their conditions.  Physicians have
> various criteria, some objective, some not, for
> evaluating how severe pain is and whether it is so
> severe as to be disabling.  It is not for [the]
> court to decide [a claimant's conditions] should
> be treated by ERISA plan administrators as
> disabling in a particular case.  That is a medical
> and administrative judgment committed to the
> discretion of the plan administrator based on a
> fair review of the evidence.

370 F.3d 869, 880 (9th Cir. 2004).

As noted, Defendants also rely on information they obtained from the Internet indicating Plaintiff was the sole contact for LDTorres.com, was the RSVP contact for the Food & Wine Society of Clark County outing in October 2006 and Christmas party in 2006, and attended the Food & Wine Society of Clark County Christmas party held at her home as evidence that Plaintiff was not "disabled from any occupation."  In evaluating Defendants' exercise of discretion as it relates to this evidence, the Court notes Plaintiff submitted the Declarations of herself, her husband, and her son to rebut Defendants' concerns about this information.  Defendants, however, urge the Court to give Plaintiff's Declaration less weight because it was drafted after Plaintiff knew about the evidence Defendants gleaned from the Internet.  *See, e.g.*, *Hawley v. Life Ins. Co. of North Am.*, NO. CIV. 08-079 FCD/KAM, 2009 U.S. Dist. LEXIS 69443, at *36 (E.D. Cal. June 5, 2009)("Plaintiff's declaration is not persuasive

23 - OPINION AND ORDER

evidence in support of his claims [because] it was drafted after plaintiff knew of the surveillance.").

In her Declaration, Plaintiff testifies she does not participate in the web design or application development work of LD Torres Design, but she occasionally answers the telephone and takes messages for her husband and son who run the business because she is home most of the time unlike her husband and son. Decl. of Donna Torres at ¶¶ 7-8. Plaintiff also testifies she did not attend the Food & Wine Society of Clark County wine-stomping and tasting festival, and she is not sure why she was listed as the RSVP contact in the October newsletter. *Id*. at ¶ 12. Plaintiff testifies she "did not perform any work before, during or after the Christmas party" for the Food & Wine Society of Clark County, she did not prepare the house, set up tables, or clean up after the Christmas party at her home. *Id*. at ¶ 13. Plaintiff's husband, Lawrence Torres, also testifies in his Declaration that Plaintiff's participation in LD Torres Design is "limited to occasional receptionist-type duties, such as fielding customer calls and taking messages for [Lawrence] or Travis." Decl. of Lawrence Torres at ¶ 2. Lawrence Torres also testifies he and Plaintiff attended a wine-sharing dinner on September 15, 2006, at the home of another member of the Food & Wine Society of Clark County, but they did not attend the wine-stomping and tasting event. *Id*. at ¶ 4. Lawrence Torres testifies Plaintiff

did not perform any work before, during, or after the Food & Wine
Society of Clark County Christmas party at their home in 2006.
*Id*. at ¶ 5.  Plaintiff's son, Travis Osbourne, testifies in his
Declaration that Plaintiff's participation in LD Torres Design is
"limited to occasional receptionist-type duties, such as fielding
customer calls and taking messages for [Travis] or Larry."  Decl.
of Travis Osbourne at ¶ 3.

Defendants note Plaintiff informed Defendants in her
November 2005 Disability Questionnaire that she was unable to
open or to respond to mail.  AR 214.  According to Defendants,
therefore, Plaintiff's level of activity as described in her
Declaration as well as the Declarations of Lawrence Torres and
Travis Osbourne in October 2007 exceeds the level that she
represented she was capable of performing in 2005 before
Defendants terminated her benefits.

Defendants also point to Dr. Singh's June 2006 opinion that
Plaintiff "continues to all [*sic*] from depression and some of her
sx could be somatic sx of depression."  AR 1548.  Similarly,
Dr. Singh opined in August 2006 that Plaintiff had "a component
of depression and somatic overlay."  AR 1537.  In November 2005,
Dr. Djergaian also opined Plaintiff might suffer from "underlying
depression associated with chronic pain and disability."
AR 1113.  Dr. Singh's opinion that Plaintiff might suffer from
depression that gave rise to some of her symptoms was not a

change or development in Plaintiff's condition that occurred
after June 30, 2006.  Nevertheless, as Defendants noted in their
January 2007 final decision, the LTD policy "limits payment of
benefits for [psychiatric symptoms] to twenty-four months of
benefits, and [Plaintiff] had already been paid beyond twenty-
four months of benefits at that point.  Therefore, no future
benefits were payable for her psychiatric conditions."  AR 478.

The Court notes Defendants concluded in March 2006 that
Plaintiff met the threshold for eligibility for LTD benefits
through June 30, 2006, based on the limited records Plaintiff had
provided as of that date.  It is evident from the record,
however, that Defendants became concerned about Plaintiff's
ongoing eligibility when Plaintiff did not timely comply with a
series of requests for updated medical records.  When Defendants
finally received Plaintiff's records after several requests,
Defendants conducted a thorough review of Plaintiff's entire
medical file including the new records and determined in
September 2006 that, as of that date, Plaintiff's medical records
did not establish that she continued to be eligible for LTD
benefits.  The Court notes Defendants did not make any effort to
reverse their eligibility decision for monthly benefits that they
had already paid.  Instead, Defendants' focus was prospective and
based on the then existing record.

In response to Plaintiff's appeal of Defendants' decision,

26 - OPINION AND ORDER

Defendants took the additional step to consider information from other outside sources, including independent records reviews by Dr. MacGuire, Dr. Hayes, and VE Barach as part of a broad and comprehensive analysis of Plaintiff's entire record.  All of this evidence again led Defendants to conclude Plaintiff was no longer eligible for benefits.  The Court notes Defendants' final decision at the end of the administrative appeal occurred less than one year after they made their March 2006 eligibility determination, but it was based on a record of significantly greater breadth than the one available in March 2006.

Applying the abuse-of-discretion standard and a moderate level of scrutiny, the Court finds on this record that a reasonable basis existed for Defendants' September 2006 conclusion that effective August 1, 2006, Plaintiff was no longer eligible for LTD benefits because the record as of that date showed she was not totally disabled within the meaning of that term as defined by the Plan.  Although there is conflicting evidence in the record regarding Plaintiff's level of activity and disability and conflicting medical opinions on the ultimate disability question, the Court, as noted, may not substitute its judgment for that of the administrator when determining eligibility for plan benefits even if the Court disagrees with the administrator's decision.  *Riffey*, 2007 WL 946200, at *14. The Court's inquiry "is not into whose interpretation of the

27 - OPINION AND ORDER

evidence is most persuasive, but whether the plan administrator's interpretation is unreasonable." *Clark*, 8 F.3d at 1432 (quotation omitted).  The Court, therefore, concludes Defendants did not abuse their discretion when they concluded in September 2006 that Plaintiff no longer was eligible for LTD benefits and, accordingly, terminated those benefits effective August 1, 2006.

In summary, the Court concludes Reliance Standard's policy requires a showing of continued eligibility and Defendants can require periodic updates to assure continuing eligibility.  In addition, Defendants did not abuse their discretion when they concluded in September 2006 that Plaintiff was no longer eligible for benefits as of August 1, 2006, and, therefore, terminated her LTD benefits.  Because Plaintiff has not shown Defendants' interpretation of the evidence is unreasonable or erroneous as a matter of law, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Summary Judgment.


## CONCLUSION

For these reasons, the Court **DENIES** Plaintiff's Motion (#69) for Summary Judgment, **GRANTS** Defendants' Cross-Motion (#76) for

Summary Judgment, and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 15th day of January, 2010.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

29 - OPINION AND ORDER